## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NORMA BETESH, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ONIA, LLC and NATHAN ROMANO, in both his individual and professional capacities,<br><br>Defendants. | Civil Action No.: 1:20-cv-09770<br><br>**CLASS AND COLLECTIVE ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Norma Betesh, on behalf of herself and others similarly situated, by and through her attorneys, Faruqi & Faruqi, LLP and Tilton Beldner, LLP, hereby alleges as follows against Defendants Onia, LLC ("Onia" or the "Company") and Nathan Romano ("Romano") (together, "Defendants"):

### NATURE OF THE CLAIMS

1.      After an incredibly successful tenure at Onia as a Sales Executive, everything changed after Plaintiff disclosed her pregnancy and requested three months of maternity leave.

2.      Romano, a co-founder and co-owner of Onia, immediately called into doubt Plaintiff's job security, telling her both verbally and via email that he would agree only to "revisit" her continued employment following her return from maternity leave.

3.      As Plaintiff made abundantly clear to Romano, she "did not request to quit work upon having a baby."

4.      Shortly after Plaintiff began her maternity leave, Defendants began pressuring her to return early.

1

5.      When she returned, Defendants forced her to sign a revised offer letter cutting her pay and deeming her a "probationary" employee hired on a "trial basis."

6.      Defendants also stripped Plaintiff of the accounts she had worked hard to develop over the previous years, and refused to pay her earned commissions in excess of $33,800, making clear their plan to push Plaintiff out of the Company.

7.      On Christmas Eve 2019, approximately ten weeks after Plaintiff's return from maternity leave, Defendants notified Plaintiff that they would no longer permit her to work from home two days per week – an accommodation she had been allowed since her return, without issue – despite the fact that Onia permitted other employees to work from home part-time.

8.      Defendants also demanded that Plaintiff work from the office until 6:00 p.m. each day, including on Fridays, thereby rescinding a religious accommodation Plaintiff had been given since her hire, which allowed her to make it home before sundown prior to the start of the Sabbath.

9.      Plaintiff lodged a protected complaint regarding Defendants' discriminatory conduct the same day.

10.     Approximately two weeks later, Defendants unceremoniously terminated her employment, after years of loyal service.

11.     Further, throughout her employment, Defendants misclassified Plaintiff and other employees as overtime-exempt, thereby denying them overtime compensation.

12.     Defendants also failed to furnish Plaintiff and her similarly situated colleagues with accurate wage statements.

13.     To redress these wrongs, Plaintiff brings claims for violations of: (i) the Title VII of the Civil Rights Act, as amended by the Pregnancy Discrimination Act, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"); (ii) the New York State Human Rights Law, N.Y. Exec. Law §§ 290, *et seq.*

("NYSHRL"); (iii) the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101, *et seq.* ("NYCHRL"); and (iv) the New York Labor Law, N.Y. Lab. Law §§ 1, *et seq.* ("NYLL"), in addition to claims for breach of contract and unjust enrichment.

14.     Additionally, Plaintiff brings collective claims under the FLSA, pursuant to 29 U.S.C. § 216(b), on behalf of herself and all other similarly situated individuals employed by Defendants at any time during the full statute of limitations period.

15.     Plaintiff also brings class claims under the NYLL, pursuant to Federal Rule of Civil Procedure ("FRCP") 23, on behalf of herself and all other similarly situated individuals employed by Defendants at any time during the full statute of limitations period.

## JURISDICTION AND VENUE

16.     Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiff's rights under Title VII and the FLSA.

17.     Pursuant to 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over Plaintiff's related claims arising under State and City law.

18.     Pursuant to 28 U.S.C. § 1391, venue is proper because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

## ADMINISTRATIVE PREREQUISITES

19.     Prior to filing this Complaint, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging, *inter alia*, discrimination in violation of Title VII.

20.     On or around October 16, 2020, the EEOC issued Plaintiff a Notice of Right to Sue.

21.     Fewer than 90 days have passed since Plaintiff received her Notice of Right to Sue from the EEOC.

22.     Any and all other prerequisites to the filing of this action have been met.

## PARTIES

A.    **Plaintiff Norma Betesh**

23.     Plaintiff is a resident of the State of New York and was employed by Defendants in New York City from in or around August 2017 through on or around January 8, 2020.

24.     At all relevant times, Plaintiff was an "employee" of Defendants within the meaning of all relevant statutes and regulations.

B.    **Defendant Onia, LLC**

25.     The Company is a domestic limited liability company with its principal place of business located at 10 East 40th Street, New York 10016.

26.     At all relevant times, the Company was an "employer" within the meaning of all relevant statutes and regulations.

C.    **Defendant Nathan Romano**

27.     Romano is a resident of New York City and a co-founder of the Onia.

28.     At all relevant times, Romano established, implemented, disseminated, and controlled the Company's employment policies applicable to Plaintiff.

29.     At all relevant times, Romano controlled and directed the terms and conditions of Plaintiff's employment.

30.     At all relevant times, Romano maintained and exercised the power to hire, fire, discipline, and promote Plaintiff.

31.     At all relevant times, Romano was an "employer" within the meaning of all relevant statutes and regulations.

## FACTS

### A.     Background

32.     On or around August 31, 2017, Defendants hired Plaintiff as a Sales Executive. *See* Exhibit ("Ex.") A (Plaintiff's offer letter, dated August 31, 2017).

33.     Plaintiff reported directly to Romano.

34.     Plaintiff quickly made herself indispensable to Defendants by creating new accounts and developing existing ones.

35.     Defendants consistently gave Plaintiff positive feedback and accolades for her work.

36.     At the outset of her employment, Plaintiff notified Defendants that she is Jewish and observes the Sabbath.

37.     As a religious accommodation, Defendants allowed Plaintiff to leave work approximately two to three hours prior to the start of Sabbath each Friday to ensure that she arrived home before sundown.

### B.     Plaintiff's Disclosure of Her Pregnancy and Request for Maternity Leave

38.     On February 1, 2019, Plaintiff met with Romano in his office.

39.     During the meeting, Plaintiff informed Romano that she was pregnant and expected to give birth on July 11, 2019.

40.     While Romano initially congratulated her regarding the news, his attitude subsequently changed when Plaintiff requested three months of maternity leave and proposed that she return to work on October 15, 2019.

41.    Almost immediately, Romano called into doubt Plaintiff's job security with Defendants, refusing to confirm that her job would be held open for her while she was out on maternity leave.

42.    Romano explained that Defendants needed to hire someone to replace Plaintiff and dismissed Plaintiff's suggestion that they hire someone on a temporary basis.

43.    To the best of Plaintiff's knowledge, Defendants did not hire a permanent or temporary Sales Executive to fulfill Plaintiff's job duties during her maternity leave.

44.    Ultimately, Romano begrudgingly agreed to allow Plaintiff to take maternity leave from the birth of her child through October 15, 2019.

45.    During her February 1, 2019 meeting, Romano sent an email memorializing his conversation with Plaintiff to both Plaintiff and Vice President of Finance and Operations Theresa Falcone ("Falcone").

46.    In his email, Romano stated that Defendants would "revisit [Plaintiff's] employment October 15" after Plaintiff completed her maternity leave to "see if there is an opportunity" for Plaintiff to continue working for the Company.

47.    Romano also wrote that Defendants planned to allow Plaintiff the flexibility to work from home and attend doctor's appointments as needed until the commencement of her maternity leave.

48.    On February 3, 2019, Plaintiff replied to Romano's email and made plain that she "did not request to quit work upon having a baby."

49.    Plaintiff also asked Romano and Falcone to "advise if [she] will have [her] current position or not" following her maternity leave.

50.    Plaintiff did not receive a response to her email.

C.    **Disparate Treatment of Plaintiff Before and During Her Maternity Leave**

51.    Despite promising Plaintiff that she could attend doctor's appointments during work hours and occasionally work remotely during her pregnancy, Defendants actively discouraged Plaintiff from doing so.

52.    For example, Defendants required Plaintiff to send calendar reminders to the entire sales team on every single occasion that she planned to attend a doctor's appointment.

53.    This unnecessary intrusion into her privacy made Plaintiff incredibly uncomfortable.

54.    Moreover, there was no legitimate business need for the Company to require Plaintiff to notify her co-workers of her doctor's appointments.

55.    To the best of Plaintiff's knowledge, Defendants did not require any other employees to notify their colleagues of doctor's appointments.

56.    Upon information and belief, Defendants created this policy to embarrass Plaintiff and disincentivize her from taking time away from the office to receive pregnancy-related medical treatment.

57.    Similarly, on the infrequent occasions when Plaintiff requested to work remotely during her pregnancy, Defendants required her to use accrued paid time off, despite the fact that she still worked an entire day.

58.    Prior to and during her maternity leave, Romano and Falcone repeatedly expressed their dissatisfaction with Plaintiff's decision to take time off to be with her newborn child and, specifically, the duration of her leave.

59.     On or around June 27, 2019 – approximately two weeks before she was scheduled to begin her maternity leave – Defendants advised Plaintiff that they no longer intended to honor their agreement to grant her maternity leave through October 15, 2019.

60.     Instead, Plaintiff was informed that she would be allowed only 10 weeks of leave.

61.     In response, Plaintiff reminded Defendants that she had planned to be on leave until October 15, 2019, as Defendants had previously promised and confirmed via email on February 1, 2019.

62.     Plaintiff began her maternity leave on or around July 15, 2019.

63.     Plaintiff gave birth to her child on July 17, 2019.

64.     Falcone, on Defendants' behalf, continued pressuring Plaintiff to change the terms of her maternity leave after it began.

65.     For example, even though Defendants did not pay Plaintiff throughout her leave, they required Plaintiff to continue participating in weekly "touch base" meetings with the sales team.

66.     Moreover, Romano also demanded that Plaintiff stay on top of her accounts while she was out on maternity leave.

67.     Further, on September 10, 2019, Falcone emailed Plaintiff to "check in and see if [her] plans changed and when [she] will be returning to work."

68.     Plaintiff responded that she still planned to return to work on October 15, 2019.

69.     Plaintiff also requested to return on a modified schedule.

70.     Specifically, Plaintiff asked to work in the office three days per week, and from home two days per week as she arranged for childcare.

71.     In response, Falcone told Plaintiff that Defendants expected Plaintiff to return to work on September 24, 2019, which was approximately three weeks prior to the agreed-upon return date.

72.     Falcone also notified Plaintiff that Defendants were unwilling to allow her to work from home two days per week, as "this is not something that the company likes to do."

73.     Notably, Defendants have permitted Falcone and at least one other employee to work from home one day per week.

74.     Defendants had no legitimate business reason to deny Plaintiff's request to work from home part-time.

75.     Falcone confirmed the illegitimate, discriminatory, and retaliatory nature of this decision when she followed up her email with a phone call to Plaintiff advising that Defendants were willing to grant Plaintiff the accommodation if she signed an amended offer letter modifying the terms and conditions of her employment.

**D.     Defendants' Discriminatory Changes to the Terms and Conditions of Plaintiff's Employment Upon Her Return from Maternity Leave**

76.     Upon Plaintiff's return from maternity leave, Defendants forced her to sign a new, revised offer letter in order to continue working at the Company. *See* Ex. B (Plaintiff's revised Offer Letter, dated October 7, 2019).

77.     Plaintiff was the only Onia employee required to sign a revised offer letter.

78.     The revised offer letter erroneously stated that Plaintiff was to be staffed in a "new position" and that she was being brought back on a "trial basis" despite her years of dedication and exceptional service to the Company. *Id.* § 2.

79.    Pursuant to the revised offer letter's terms, Defendants planned to "monitor" Plaintiff every 30 days of her employment, with no specified date on which these recurring "probationary periods" would end.  *Id.*

80.    During her recurring, 30-day "probationary period," Defendants planned to subject Plaintiff to monthly "observation and evaluation" of her job performance.  *Id.*

81.    Defendants also planned to observe and evaluate Plaintiff's "work habits and conduct," including her "attendance" and "ability to interact with coworkers" (*id.*) – both thinly-veiled references to Plaintiff's legally protected maternity leave and requests for pregnancy-related accommodations (*e.g.*, leaving work for doctor's appointments; working from home part-time).

82.    Simply put, Defendants suddenly began treating Plaintiff as an unfamiliar, entry-level employee due to her pregnancy and status as a new mother.

83.    Notably, when Plaintiff started working for Defendants in 2017, Plaintiff was not hired on a "trial basis" or required to pass "probationary periods."  *Compare* Ex. A *with* Ex. B § 2.

84.    The revised offer letter also stated, "You will no longer be eligible for the commission stated in your original offer letter."  Ex. B § 3.

85.    Whereas Plaintiff was previously provided a clear commission structure in which she earned "4% commission based on the net amount received from opening new accounts" (*see* Ex. A at 1) – in addition to 2% commission on existing accounts – Defendants now retained complete discretion over Plaintiff's incentive compensation, which Plaintiff would supposedly receive in the form of a year-end bonus.  *See* Ex. B § 3.

86.     To make matters even worse, approximately one month after Plaintiff returned from leave, Defendants transferred most of Plaintiff's accounts, which she had worked hard to develop, to other members of the sales team.

87.     Rather than continuing to manage approximately $2 million to $3 million in business, as Plaintiff did prior to taking leave and during the first month after her return, Plaintiff was suddenly forced to establish new accounts from scratch, making it nearly impossible for Plaintiff to earn a bonus under her new incentive compensation structure.

88.     Despite these additional hurdles, Plaintiff still managed to succeed by developing new clients and relationships in the months after she returned from maternity leave.

**E.    Defendants' Discriminatory and Retaliatory Termination of Plaintiff's Employment**

89.     Without any warning, on Christmas Eve 2019 – at which time Plaintiff was away on a scheduled vacation – Falcone informed Plaintiff via email that Defendants would no longer allow Plaintiff to work remotely two days per week, and further demanded that Plaintiff work out of the office until 6:00 p.m. each day.

90.     Defendants were aware that Plaintiff commuted from Westchester County to New York City, and depended on her typical schedule to carry out childcare duties.

91.     Defendants were also aware that Plaintiff observes the Sabbath and, prior to this sudden demand, had allowed her to leave early on Fridays as a religious accommodation.

92.     Defendants again failed to provide any legitimate business reason for this decision.

93.     Plaintiff replied, objecting to yet another change to the terms and conditions of her employment following the disclosure of her pregnancy and maternity leave.

94.    Specifically, Plaintiff complained that Defendants reduced her pay, took away her accounts, and put her in a position to earn far less than her peers following her return from maternity leave.

95.    On January 8, 2020, Defendants terminated Plaintiff's employment based on her pregnancy, maternity leave, and objection to the Company's rescission of her religious accommodation.

96.    Defendants also discriminated and retaliated against Plaintiff by failing to pay her commissions in excess of $33,800, which she earned under her original offer letter (*see* Ex. A) and prior to the change to her incentive compensation structure.  *See* Ex. B.

97.    Plaintiff complained to Defendants regarding the non-payment of her commissions.

98.    Defendants promised to pay Plaintiff what she was owed by January 1, 2020.

99.    Instead, as noted above, Defendants fired Plaintiff one week after this deadline.

100.    To date, Defendants still have not paid Plaintiff her earned commissions.

**F.    Misclassification of Plaintiff as Overtime-Exempt and Failure to Pay Her Overtime**

101.    As a Sales Executive, Plaintiff's duties included selling Onia products to retailers across the globe, including department stores, resorts, and boutiques.

102.    Plaintiff made sales at Onia's offices or, when working remotely, from her home.

103.    Plaintiff made sales primarily via telephone and email.

104.    Plaintiff reported directly to Romano, who supervised her closely and directed her work.

105.    Indeed, Romano insisted that he be copied on all emails between Plaintiff and Onia clients.

106.    Further, Romano regularly contacted Plaintiff via phone, email, and text message outside of business hours, including late at night and in the early morning, to demand updates regarding her work or that she contact a client immediately.

107.    This was typical of Romano's supervision of all Onia employees.

108.    Plaintiff did not supervise any other employees during her employment.

109.    Plaintiff did not have the authority to hire, fire, or discipline.

110.    Plaintiff did not perform work directly related to the management or general business operations of Onia or its clients.

111.    Plaintiff worked an average of approximately 41 to 50 hours per week.

112.    During weeks in which Plaintiff traveled for work, such as for a trade show, she worked approximately 60 hours.

113.    However, Defendants paid Plaintiff a fixed salary, plus commissions, irrespective of her hours worked.  *See* Ex. C (sampling of Plaintiff's paystubs).

114.    For example, in or around the week of July 9, 2018, Plaintiff worked all seven days for a total of 60 hours, as she was attending a trade show in Miami, Florida.

115.    Nevertheless, Defendants did not pay her any overtime wages.

116.    Defendants did this by misclassifying Plaintiff, along with much of Onia's staff, as overtime-exempt.

117.    As such, Defendants failed to pay Plaintiff anywhere from one to nine hours of overtime compensation per week.

118.    Defendants also failed to furnish Plaintiff with accurate wage statements, as her wage statements did not reflect her actual hours worked.

## FLSA COLLECTIVE ACTION ALLEGATIONS

119.    Plaintiff brings this action, in part, as a collective action under the FLSA and applicable regulations thereunder.

120.    Plaintiff seeks to maintain claims, pursuant to FLSA § 216(b), on behalf of herself and all similarly situated individuals who have been employed by Defendants at any time during the full statute of limitations period (the "FLSA Collective").

121.    At all relevant times, Plaintiff and the FLSA Collective were paid in the same manner and under the same common policies, plans, and scheme, and were subject to Defendants' practices of misclassifying them as overtime-exempt, improperly paying them on a salary basis, and thereby denying them overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek.

122.    Throughout the full statute of limitations period, Defendants have been fully aware of the duties performed by Plaintiff and the FLSA Collective, and that those duties were not exempt from the provisions of the FLSA.

123.    Defendants' violations of the FLSA have been willful, repeated, knowing, intentional, and without a good faith basis, and have significantly damaged Plaintiff and the FLSA Collective.

124.    As a result of Defendants' conduct, they are liable to Plaintiff and the FLSA Collective for the full amount of their unpaid wages with interest, an additional equal amount as liquidated damages, plus attorneys' fees and costs.

125.    While the exact number of the FLSA Collective is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes there are

approximately 50 other similarly situated persons who were employed by Defendants at any time during the full statute of limitations period.

126.    Plaintiff is currently unaware of the identities of the members of the FLSA Collective.

127.    Accordingly, Defendants should be required to provide Plaintiff with a list of all persons employed by Defendants at any time during the full statute of limitations period, along with their last known addresses, telephone numbers, and email addresses, so Plaintiff can give the members of the FLSA Collective notice of this action and an opportunity to make an informed decision about whether to participate.

## CLASS ACTION ALLEGATIONS

128.    Plaintiff also brings this action, in part, as a class action under the NYLL and applicable regulations thereunder.

A.    **Class Definition**

129.    Plaintiff seeks to maintain claims, pursuant to FRCP 23, on behalf of herself and a class of all other individuals who have been employed by Defendants as, *inter alia*, members of Onia's Sales, Design, Creative, Production, E-commerce & Customer Service, Marketing, Finance, and/or Operations & Logistics teams at any time during the full statute of limitations period (the "NYLL Class").

130.    Plaintiff alleges, on behalf of herself and the NYLL Class, that Defendants violated the NYLL by, *inter alia*: (i) denying them overtime compensation at a rate of one and one-half times their regular rate of pay for all hours worked in excess of 40 hours in a workweek; and (ii) failing to furnish accurate wage statements.

131.    Plaintiff and the NYLL Class have standing to seek such relief because of the adverse effects that Defendants' wage practices have had on them individually and as a group.

132.    The wage practices described in this Complaint are part of Defendants' normal course of conduct.

133.    The claims brought pursuant to the NYLL may be pursued by all similarly situated persons who do not opt out of the NYLL Class, pursuant to FRCP 23.

**B.    Requirements of Rule 23(a)**

**i.    Numerosity and Impracticability of Joinder**

134.    The members of the NYLL Class are so numerous that joinder of all members is impracticable.

135.    While the exact number of the members of the NYLL Class is unknown to Plaintiff at this time, and can only be ascertained through appropriate discovery, Plaintiff believes there are approximately 100 members of the NYLL Class.

136.    Therefore, the numerosity requirement of FRCP 23(a) is satisfied.

**ii.    Common Questions of Law and Fact**

137.    Common questions of law and fact, the answers to which will meaningfully advance this litigation, exist as to the NYLL Class and predominate over any questions only affecting the members of the NYLL Class individually.

138.    Indeed, there are few, purely individual issues in this action.

139.    The questions of law and fact that are common to Plaintiff and the NYLL Class include, but are not limited to:

(a)    Whether Defendants misclassified them as overtime-exempt;

(b)    Whether Defendants improperly paid them on a salary basis;

16

(c)    Whether Defendants failed to pay them all overtime compensation owed; and

(d)    Whether Defendants failed to furnish accurate wage statements.

140.    Therefore, the common question requirement of FRCP 23(a) is satisfied.

**iii.    Typicality of Claims and Relief Sought**

141.    Plaintiff's claims are typical of the claims of the members of the NYLL Class she seeks to represent.

142.    Plaintiff and the NYLL Class work, or have worked, for Defendants and are, or were, subject to the same compensation policies and practices.

143.    The wage practices suffered by Plaintiff, and the damages resulting therefrom, are sadly typical of Defendants' treatment of their employees generally, and of the NYLL Class specifically.

144.    Therefore, the typicality requirement of FRCP 23(a) is satisfied.

**iv.    Adequacy of Representation**

145.    Plaintiff will fairly and adequately protect the interests of the NYLL Class because her interests are coextensive and aligned with those of the members of the NYLL Class.

146.    Plaintiff has no interests adverse to the NYLL Class she seeks to represent and has retained competent and experienced counsel.

147.    Plaintiff is willing and able to represent the NYLL Class as fairly and vigorously as she pursues her similar individual claims.

148.    Plaintiff has retained counsel who are qualified and experienced in employment class action litigation and who are able to meet the demands necessary to litigate a class action of this size and complexity.

149.    The combined interests, experience, and resources of Plaintiff and her counsel to competently litigate the individual and NYLL Class claims at issue in the instant action satisfy the adequacy of representation requirement of FRCP 23(a).

**C.    Requirements of Rule 23(b)(1)**

150.    Without certification of the NYLL Class, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations.

151.    Accordingly, certification of the NYLL Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiff, the NYLL Class, and Defendants.

152.    By filing this Complaint, Plaintiff is preserving the rights of the NYLL Class with respect to the statute of limitations on their claims.

153.    Therefore, not certifying a class would substantially impair and/or impede the remaining members of the NYLL Class' ability to protect their interests.

**D.    Requirements of Rule 23(b)(2)**

154.    Defendants acted on grounds, described herein, generally applicable to Plaintiff and the NYLL Class by denying Plaintiff and the NYLL Class overtime wages and failing to furnish accurate wage statements.

155.    These acts are not sporadic or isolated and support the request for final injunctive and declaratory relief with respect to Plaintiff and the NYLL Class as a whole.

156.    Declaratory and injunctive relief flow directly and automatically from proof of the common questions of law and fact regarding the entitlement to and denial of overtime wages and accurate wage statements.

157.    Declaratory and injunctive relief are the factual and legal predicates for Plaintiff's and the NYLL Class' entitlement to monetary and non-monetary remedies for such wage violations.

158.    Accordingly, injunctive and declaratory relief are among the predominant forms of relief sought in this case.

**E.    Requirements of Rule 23(b)(3)**

159.    The common issues of fact and law affecting Plaintiff's claims and those of the NYLL Class – including, without limitation, the common issues identified in the paragraphs above – predominate over issues affecting only individual claims.

160.    A class action is superior to other available means for the fair and efficient adjudication of Plaintiff's claims and the claims of the NYLL Class.

161.    The cost of proving Defendants' pattern and practice of denying overtime wages and failing to furnish accurate wage statements makes it impractical for the members of the NYLL Class to pursue their claims individually.

162.    This class action will not be difficult to manage for reasons including, without limitation, the discrete organizational nature of all members of the NYLL Class (they must have worked for Defendants during the statutory period), as well as the common questions of law and fact described herein.

**FIRST CAUSE OF ACTION**
**VIOLATIONS OF TITLE VII: SEX DISCRIMINATION**
*(On Behalf of Plaintiff Individually)*

163.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

164.    During the full statutory period, Plaintiff was protected by the provisions of Title VII, 42 U.S.C. §§ 2000e, *et seq.*, and all applicable regulations thereunder.

165.    By the actions described above, among others, Defendants discriminated against Plaintiff based on her sex and pregnancy by, *inter alia*, disparately enforcing employment policies against her, altering the terms and conditions of her employment, and terminating her employment.

166.    Defendants' unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under Title VII.

167.    As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

168.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## VIOLATIONS OF TITLE VII: RELIGIOUS DISCRIMINATION
### *(On Behalf of Plaintiff Individually)*

169.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

170.    During the full statutory period, Plaintiff was protected by the provisions of Title VII, 42 U.S.C. §§ 2000e, *et seq.*, and all applicable regulations thereunder.

171.    By the actions described above, among others, Defendants discriminated against Plaintiff based on her religion by, *inter alia*, rescinding her religious accommodation.

172.    Defendants' unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under Title VII.

173.    As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

174.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### VIOLATIONS OF TITLE VII: RETALIATION
### *(On Behalf of Plaintiff Individually)*

175.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

176.    During the full statutory period, Plaintiff was protected by the provisions of Title VII, 42 U.S.C. §§ 2000e, *et seq.*, and all applicable regulations thereunder.

177.    As set forth above, Plaintiff engaged in protected activity under Title VII by, *inter alia*, complaining to Defendants regarding discrimination on the basis of her sex and pregnancy.

178.    Defendants retaliated against Plaintiff for her protected activity by, *inter alia*, terminating her employment.

179.    Defendants' unlawful retaliatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under Title VII.

180.    As a direct and proximate result of Defendants' unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

181.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
## VIOLATIONS OF THE NYSHRL: GENDER DISCRIMINATION
### *(On Behalf of Plaintiff Individually)*

182.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

183.    During the full statutory period, Plaintiff was protected by the provisions of the NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*, and all applicable regulations thereunder.

184.    By the actions described above, among others, Defendants discriminated against Plaintiff based on her gender and pregnancy by, *inter alia*, disparately enforcing employment policies against her, altering the terms and conditions of her employment, and terminating her employment.

185.    Defendants' unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYSHRL.

186.    As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

187.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

## FIFTH CAUSE OF ACTION
## VIOLATIONS OF THE NYSHRL: RELIGIOUS DISCRIMINATION
### *(On Behalf of Plaintiff Individually)*

188.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

189.    During the full statutory period, Plaintiff was protected by the provisions of the NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*, and all applicable regulations thereunder.

190.    By the actions described above, among others, Defendants discriminated against Plaintiff based on her religion by, *inter alia*, rescinding her religious accommodation.

191.    Defendants' unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYSHRL.

192.    As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

193.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

### SIXTH CAUSE OF ACTION
### VIOLATIONS OF THE NYSHRL: RETALIATION
#### *(On Behalf of Plaintiff Individually)*

194.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

195.    During the full statutory period, Plaintiff was protected by the provisions of the NYSHRL, N.Y. Exec. Law §§ 290, *et seq.*, and all applicable regulations thereunder.

196.    As set forth above, Plaintiff engaged in protected activity under the NYSHRL by, *inter alia*, complaining to Defendants regarding discrimination on the basis of her sex and pregnancy.

197.    Defendants retaliated against Plaintiff for her protected activity by, *inter alia*, terminating her employment.

198.    Defendants' unlawful retaliatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYSHRL.

199.    As a direct and proximate result of Defendants' unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

200.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

## SEVENTH CAUSE OF ACTION
## VIOLATIONS OF THE NYCHRL: SEX DISCRIMINATION
### *(On Behalf of Plaintiff Individually)*

201.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

202.    During the full statutory period, Plaintiff was protected by the provisions of the NYCHRL, N.Y.C. Admin. Code §§ 8-101, *et seq.*, and all applicable regulations thereunder.

203.    By the actions described above, among others, Defendants discriminated against Plaintiff based on her sex and pregnancy by, *inter alia*, disparately enforcing employment policies against her, altering the terms and conditions of her employment, and terminating her employment.

204.    Defendants' unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYCHRL.

205.    As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

206.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

**EIGHTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYCHRL: RELIGIOUS DISCRIMINATION**
*(On Behalf of Plaintiff Individually)*

207.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

208.    During the full statutory period, Plaintiff was protected by the provisions of the NYCHRL, N.Y.C. Admin. Code §§ 8-101, *et seq.*, and all applicable regulations thereunder.

209.    By the actions described above, among others, Defendants discriminated against Plaintiff based on her religion by, *inter alia*, rescinding her religious accommodation.

210.    Defendants' unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYCHRL.

211.    As a direct and proximate result of Defendants' unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

212.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

**NINTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYCHRL: RETALIATION**
*(On Behalf of Plaintiff Individually)*

213.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

214.    During the full statutory period, Plaintiff was protected by the provisions of the NYCHRL, N.Y.C. Admin. Code §§ 8-101, *et seq.*, and all applicable regulations thereunder.

215.    As set forth above, Plaintiff engaged in protected activity under the NYSHRL by, *inter alia*, complaining to Defendants regarding discrimination on the basis of her sex and pregnancy.

216.    Defendants retaliated against Plaintiff for her protected activity by, *inter alia*, terminating her employment.

217.    Defendants' unlawful retaliatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYCHRL.

218.    As a direct and proximate result of Defendants' unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

219.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

<b><u>TENTH CAUSE OF ACTION</u><br><u>VIOLATIONS OF THE NYLL: FAILURE TO PAY ALL WAGES OWED</u></b><br><i>(On Behalf of Plaintiff Individually)</i>

220.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

221.    Throughout the full statutory period, Plaintiff was protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, as well as all applicable regulations thereunder.

222.    The NYLL requires covered employers, including Defendants, to compensate employees in accordance with their agreed terms of employment.

223.    Plaintiff was not exempt from this requirement and is entitled to be paid by Defendants in accordance with the agreed terms of her employment, including, *inter alia*, the

agreed terms regarding payment of commissions memorialized in her August 31, 2017 offer letter (*see* Ex. A).

224.    By the actions described above, among others, Defendants failed to pay Plaintiff all of her earned commissions.

225.    As a result of Defendants' failure to compensate Plaintiff in accordance with the agreed terms of her employment, Defendants have violated the NYLL and/or applicable regulations thereunder.

226.    Defendants' unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYLL.

227.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

228.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

**ELEVENTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PAY FINAL WAGES**
*(On Behalf of Plaintiff Individually)*

229.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

230.    Throughout the full statutory period, Plaintiff was protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, as well as all applicable regulations thereunder.

231.    The NYLL requires covered employers, including Defendants, upon the end of an employee's employment, to pay that employee's final wages no later than the regular pay day for the pay period during which her employment ends.

232.    Plaintiff was not exempt from the requirement that Defendants pay Plaintiff her final wages.

233.    By the actions described above, among others, Defendants have failed to pay Plaintiff her final wages.

234.    Indeed, to date, Defendants have not paid Plaintiff all of her earned commissions.

235.    As a result of Defendants' failure to pay Plaintiff her final wages, Defendants have violated the NYLL and/or applicable regulations thereunder.

236.    Defendants' unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYLL.

237.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

238.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

## TWELFTH CAUSE OF ACTION
## VIOLATIONS OF THE NYLL: LATE PAYMENT OF WAGES
### *(On Behalf of Plaintiff Individually)*

239.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

240.    During the full statutory period, Plaintiff was protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, as well as all applicable regulations thereunder.

241.    The NYLL requires covered employers, including Defendants, to pay employees all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends.

242.    Plaintiff was not exempt from the requirement that Defendants timely pay Plaintiff all of her wages owed.

243.    By the actions described above, among others, Defendants have failed to pay Plaintiff all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends, including by, *inter alia*, failing to timely pay her earned commissions.

244.    As a result of Defendants' failure to pay Plaintiff all compensation earned in a particular workweek on the regular pay day for the period in which such workweek ends, Defendants have violated the NYLL and/or applicable regulations thereunder.

245.    Defendants' unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYLL.

246.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

247.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

**THIRTEENTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: RETALIATION**
*(On Behalf of Plaintiff Individually)*

248.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

249.    During the full statutory period, Plaintiff was protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq.*, as well as all applicable regulations thereunder.

250.    The NYLL prohibits covered employers, including Defendants, from retaliating against current or former employees because they engage in protected activity concerning alleged violations of the NYLL.

251.    Plaintiff was not exempt from the NYLL's protections against retaliation.

252.    As set forth above, Plaintiff engaged in protected activity under the NYLL by, *inter alia*, complaining to Defendants regarding nonpayment of her earned commissions.

253.    Defendants retaliated against Plaintiff for her protected activity by, *inter alia*, terminating her employment.

254.    Defendants' unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the NYLL.

255.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

256.    Plaintiff is further entitled to an award of reasonable attorneys' fees and costs.

### FOURTEENTH CAUSE OF ACTION
### BREACH OF CONTRACT
*(On Behalf of Plaintiff Individually)*

257.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

258.    On or around August 31, 2017, Plaintiff and Defendants entered into a binding contract stating, *inter alia*, that Plaintiff was to receive 4% commission based on the net amount received from opening new accounts on a quarterly basis.  *See* Ex. A.

259.    Throughout her employment, Plaintiff opened new accounts with Defendants and performed all duties and obligations under the terms of the contract.

260.    As detailed above, Defendants breached the contract by, *inter alia*, failing to pay her all commissions she earned under the terms of the contract.

261.    Defendants' breaches were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights.

262.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

**FIFTEENTH CAUSE OF ACTION**
**UNJUST ENRICHMENT**
*(On Behalf of Plaintiff Individually)*

263.    Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

264.    On or around August 31, 2017, Plaintiff and Defendants entered into a binding contract stating, *inter alia*, that Plaintiff was to receive 4% commission based on the net amount received from opening new accounts on a quarterly basis. *See* Ex. A.

265.    Throughout her employment, Plaintiff opened new accounts and performed all duties and obligations under the terms of the contract.

266.    As detailed above, Defendants breached the contract by, *inter alia*, failing to pay her all commissions she earned under the terms of the contract.

267.    Accordingly, Defendants retained the benefit of Plaintiff's uncompensated work under circumstances which rendered it inequitable and unjust for Defendants to retain such benefits without paying for their value.

268.    Defendants' actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights.

269.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law.

## SIXTEENTH CAUSE OF ACTION
## VIOLATIONS OF THE FLSA: FAILURE TO PAY OVERTIME
### *(On Behalf of Plaintiff and the FLSA Collective)*

270.    Plaintiff, on behalf of herself and the FLSA Collective, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

271.    During the full statutory period, Plaintiff and the FLSA Collective were protected by the provisions of the FLSA, 29 U.S.C. §§ 201, *et seq*., and applicable regulations thereunder.

272.    The FLSA requires covered employers, including Defendants, to compensate employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek.

273.    Neither Plaintiff nor the FLSA Collective was exempt from the requirement that Defendants pay them overtime under the FLSA, and they are entitled to be paid overtime by Defendants for all hours worked in excess of forty (40) hours in a workweek during the full statute of limitations period.

274.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiff and the FLSA Collective at a rate not less than one and one-half times their regular rates of pay for all hours worked in excess of forty (40) hours in a workweek.

275.    As a result of Defendants' failure to compensate Plaintiff and the FLSA Collective at a rate not less than one and one-half times their regular rates of pay for all hours worked in

excess of forty (40) hours in a workweek, Defendants have violated the FLSA and/or applicable regulations thereunder.

276.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the FLSA Collective in accordance with the FLSA and/or applicable regulations thereunder.

277.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the FLSA Collective have suffered and continue to suffer harm for which they are entitled to an award of damages to the greatest extent permitted by law.

278.    Plaintiff and the FLSA Collective are further entitled to an award of reasonable attorneys' fees and costs.

**SEVENTEENTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: FAILURE TO PAY OVERTIME**
*(On Behalf of Plaintiff and the NYLL Class)*

279.    Plaintiff, on behalf of herself and the NYLL Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

280.    During the full statutory period, Plaintiff and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq*., and applicable regulations thereunder.

281.    The NYLL requires covered employers, including Defendants, to compensate employees at a rate not less than one and one-half times their regular rate of pay for all hours worked in excess of forty (40) hours in a workweek.

282.    Neither Plaintiff nor the NYLL Class was exempt from the requirement that Defendants pay them overtime under the NYLL, and they are entitled to be paid overtime by Defendants for all hours worked in excess of forty (40) hours in a workweek during the full statute of limitations period.

283.    Throughout the full statute of limitations period, Defendants have engaged in a policy and practice of failing to compensate Plaintiff and the NYLL Class at a rate not less than one and one-half times their regular rates of pay for all hours worked in excess of forty (40) hours in a workweek.

284.    As a result of Defendants' failure to compensate Plaintiff and the NYLL Class at a rate not less than one and one-half times their regular rates of pay for all hours worked in excess of forty (40) hours in a workweek, Defendants have violated the NYLL and/or applicable regulations thereunder.

285.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to compensate Plaintiff and the NYLL Class in accordance with the NYLL and/or applicable regulations thereunder.

286.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the NYLL Class have suffered and continue to suffer harm for which they are entitled to an award of damages to the greatest extent permitted by law.

287.    Plaintiff and the NYLL Class are further entitled to an award of reasonable attorneys' fees and costs.

**EIGHTEENTH CAUSE OF ACTION**
**VIOLATIONS OF THE NYLL: INACCURATE WAGE STATEMENTS**
*(On Behalf of Plaintiff and the NYLL Class)*

288.    Plaintiff, on behalf of herself and the NYLL Class, hereby repeats and realleges the foregoing allegations as if set forth fully herein.

289.    During the full statutory period, Plaintiff and the NYLL Class were protected by the provisions of the NYLL, N.Y. Lab. Law §§ 1, *et seq*., and applicable regulations thereunder.

290.    The NYLL requires covered employers, including Defendants, to "furnish each employee with a statement with every payment of wages, listing the following:  the dates of work covered by that payment of wages;  name of employee;  name of employer;  address and phone number of employer;  rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other;  gross wages;  deductions;  allowances, if any, claimed as part of the minimum wage;  and net wages."

291.    Neither Plaintiff nor the NYLL Class was exempt from the requirement that their employer provide them with accurate wage statements.

292.    Throughout the full statute of limitations period, Defendants have failed to furnish Plaintiff and the NYLL with accurate wage statements.

293.    As a result of their failure to furnish accurate wage statements to Plaintiff and the NYLL, Defendants have violated, *inter alia*, NYLL § 195.

294.    Defendants have acted willfully and deliberately in maintaining an intentional practice of failing to provide proper wage statements to Plaintiff and the NYLL in accordance with the NYLL.

295.    Defendants' violations of the NYLL have significantly damaged Plaintiff and the members of the NYLL Class, entitling them each to recover $250 for each workday the violation occurred, or continued to occur, not to exceed $5,000, plus attorneys' fees, costs, and all other available damages to the greatest extent permitted by law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself, the FLSA Collective, and the NYLL Class, respectfully requests that the Court:

A.      Declare that the practices complained of herein are unlawful under applicable federal, State, and City law;

B.      Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C.      Declare this action to be maintainable as a collective action pursuant to 29 U.S.C. § 216, and direct Defendants to provide Plaintiff with a list of all members of the FLSA Collective, including all last known addresses, telephone numbers, and e-mail addresses of each such person, so Plaintiff can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

D.      Declare this action to be maintainable as a class action pursuant to FRCP 23, and direct Defendants to provide Plaintiff with a list of all members of the NYLL Class, including all last known addresses, telephone numbers, and email addresses of each such person, so Plaintiff can give such persons notice of this action and an opportunity to make an informed decision about whether to participate in it;

E.      Designate Plaintiff as the representative of the NYLL Class, and her counsel of record as class counsel;

F.      Grant Plaintiff, the FLSA Collective, and the NYLL Class an award of damages in an amount to be determined at trial to compensate them for their economic damages;

G.      Grant Plaintiff, the FLSA Collective, and the NYLL Class an award of damages in an amount to be determined at trial for any and all other monetary and/or non-monetary losses they have suffered;

H.      Grant Plaintiff, the FLSA Collective, and the NYLL Class an award of prejudgment interest on the damages they are awarded to the greatest extent permitted by law;

I.      Grant Plaintiff, the FLSA Collective, and the NYLL Class an award of liquidated damages in an amount to be determined at trial;

J.      Grant Plaintiff an award of damages in an amount to be determined at trial to compensate her for all non-monetary and/or compensatory damages she has suffered, including, without limitation, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

K.      Grant Plaintiff an award of punitive damages in an amount to be determined at trial;

L.      Grant Plaintiff, the FLSA Collective, and the NYLL Class an award of reasonable attorneys' fees to the greatest extent permitted by law;

M.      Grant Plaintiff, the FLSA Collective, and the NYLL Class an award of reasonable costs that they have incurred in this action, including, without limitation, expert witness fees;

N.      Grant Plaintiff, the FLSA Collective, and the NYLL Class all other available damages to the greatest extent permitted by law; and

O.      Grant such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues of fact and damages.

Dated: November 19, 2020             **FARUQI & FARUQI, LLP**

By: */s/ Innessa M. Huot*
    Innessa Melamed Huot
    Alex J. Hartzband
    Patrick J. Collopy

685 Third Avenue, 26th Floor
New York, New York 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331
ihuot@faruqilaw.com
ahartzband@faruqilaw.com
pcollopy@faruqilaw.com

**TILTON BELDNER LLP**
Eric S. Tilton
Joshua Beldner
626 RXR Plaza
Uniondale, New York 11556
Telephone: (516) 262-3602
Facsimile: (516) 324-2170
etilton@tiltonbeldner.com
jbeldner@tiltonbeldner.com

*Attorneys for Plaintiff and the proposed*
*FLSA Collective and NYLL Class*

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NORMA BETESH, on behalf of herself and others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>ONIA, LLC and NATHAN ROMANO, in both his individual and professional capacities,<br><br>     Defendants. | Civil Action No.:<br><br>**CONSENT TO SUE** |

I, Norma Betesh, was employed by Defendants in the last three years and am a named Plaintiff in the above-captioned action, *Betesh v. Onia, LLC, et al.*, pending in the United States Court for the Southern District of New York.  I hereby consent to sue Defendants and be a party Plaintiff in this lawsuit.

I hereby appoint the law firms of Faruqi & Faruqi, LLP, located at 685 Third Ave., 26th Fl., New York, NY 10017, telephone number (212) 983-9330, and Tilton Beldner, LLP, located at 626 RXR Plaza, Uniondale, NY 11556, telephone number (516) 262-3602, as my attorneys.

Name (Print):   Norma Betesh

Signature:   _DocuSigned by:_ 0425D986D154409...

Date:   11/18/2020 | 4:13 PM EST