

NEW YORK CALIFORNIA DELAWARE GEORGIA PENNSYLVANIA

April 5, 2021

**Innessa M. Huot**
ihuot@faruqilaw.com

**VIA ECF**

The Honorable Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *Betesh v. Onia, LLC et al.*, Civil Action No. 20-cv-9770 (AT)(BCM)

Dear Judge Torres:

We represent Plaintiff Norma Betesh ("Betesh") in the above-referenced matter and write on consent from Defendants Onia, LLC ("Onia" or the "Company") and Nathan Romano ("Romano") (collectively, "Defendants") to respectfully request approval of the parties' proposed settlement of this action (the "Settlement"), as required by *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). As detailed below, the Settlement is reasonable under each of the five *Wolinksy* factors (*see Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012)) and complies with the *Cheeks* admonitions. *See Cheeks*, 796 F.3d at 206.

## I. Background

From August 31, 2017 through January 8, 2020, Plaintiff worked as a Sales Executive for Onia, a "luxury swim and ready-to-wear brand that crafts minimal, stylish, and essential products for travelers." ECF Nos. 1 ("Complaint") ¶¶ 32, 95; 26-1 ¶ 2. As a Sales Executive, Plaintiff was responsible for selling Onia's products to retailers across the globe, including department stores, resorts, and boutiques. Complaint ¶ 101. Plaintiff made most of her sales via telephone or email from Onia's offices or from her home when she worked remotely. *Id.* ¶¶ 102-03.

After Plaintiff's termination, the parties exchanged pre-litigation correspondence and documents, and engaged in months of negotiations in an attempt to resolve Plaintiff's claims. Huot Decl. ¶ 6.[1] On November 19, 2020, Plaintiff initiated this action by filing a Complaint alleging wage claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA") and New York Labor Law, N.Y. Lab. Law §§ 190, *et seq*. ("NYLL"); discrimination and retaliation claims under Title VII of the Civil Rights Act ("Title VII"), New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"); as well as breach of contract claims. *See* Complaint ¶¶ 13-15.

[1] Hereinafter, all references to Declaration of Innessa M. Huot in Support of Settlement Approval and Award of Attorneys' Fees and Expenses shall be referred to as "Huot Decl."

With respect to Plaintiff's wage claims, Plaintiff alleges that Defendants violated the FLSA and NYLL by failing to pay her all wages owed, including overtime, final wages and commissions, and also failing to furnish her with accurate wage statements. *Id.* ¶¶ 96-118; 220-238; 257-262; 270-287. On January 6, 2021, Defendants filed their Answer wherein they denied liability for Plaintiff's claims and asserted affirmative defenses. *See* ECF No. 21. On January 27, 2021, Plaintiff filed a motion for conditional certification of a collective action. ECF Nos. 23-27.

In furtherance of the parties' efforts to reach a fair and reasonable settlement of this matter, counsel engaged in extensive investigation and voluminous discovery, including the exchange of company records, payroll documents, correspondence, sales records, commission documents, personnel records, insurance information, and mitigation records. *Id.* ¶ 10. The parties conferred numerous times as to the strengths, weaknesses, and merits of Plaintiff's claims and Defendants' defenses and exchanged case law supporting their respective positions. *Id.* ¶ 11. Based on the records exchanged and a thorough investigation, Plaintiff's counsel calculated Plaintiff's damages. *Id.* ¶ 12.

On March 2, 2021, the parties participated in full day mediation before Michael Koblenz, Esq., an experienced and well-respected mediator with the United States District Court for the Southern District of New York Panel Mediation Program. Huot Decl. ¶ 13. After months of negotiations, with the assistance of Mr. Koblenz, the parties were finally able to reach an agreement to resolve this action on the terms set forth in the Settlement. Huot Decl. ¶¶ 14-15; *see also id.* at Exhibit A ("Ex. A").[2]

## II. <u>The Proposed Settlement is Fair, Reasonable, and Consistent with *Cheeks*</u>

This Settlement is fair and reasonable as it provides for a ***net 65.89% recovery*** of Plaintiff's best-case scenario damages for her FLSA and NYLL claims for unpaid wages, including unpaid overtime wages, final wages, unpaid commission, and ***statutory damages*** for wage statement violations – net of attorneys' fees and costs – even assuming all legal assumptions are made in Plaintiff's favor. *Id.* ¶ 16. Indeed, this valuation assumes that Plaintiff prevails on all of her wage claims and Defendants lose on all of their defenses. *Id.*

To assess the reasonableness of the Settlement, the Court must consider the totality of the circumstances, including, but not limited to, examining the five so-called *Wolinsky* factors: (1) Plaintiff's range of possible recovery; (2) the extent to which the Settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the Settlement is the product of arm's-length negotiations between experienced counsel; and (5) the possibility of fraud or collusion. *Wolinsky*, 900 F. Supp. 2d at 335-36. Additionally, courts scrutinize the "admonitions" set forth in *Cheeks* – specifically, that overbroad releases and stringent confidentiality provisions are to be avoided. *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824 (SIL), 2015

[2] Hereinafter, all exhibits attached to the Huot Decl. will be referred to as "Ex. __."






WL 6550560, at *1 (E.D.N.Y. Oct. 28, 2015). The Settlement satisfies the five *Wolinsky* factors and does not conflict with the *Cheeks* admonitions.

**A. Plaintiff Will Receive a Significant Portion of Her Maximum Possible Recovery Under the Settlement**

The first *Wolinsky* factor supports a finding that the Settlement is fair and reasonable, as the Settlement provides Plaintiff with a substantial portion of the maximum possible recovery that she could obtain if she litigated this matter through summary judgment and/or trial. Indeed, where all facts are viewed in light most favorable to Plaintiff, this Settlement results in Plaintiff receiving ***65.89%*** of her economic damages (net of fees and costs) for unpaid wages, including unpaid overtime, final wages, and unpaid commissions, as well as statutory damages for wage statement violations. Huot Decl. ¶ 16.

This recovery reflects a reasonable compromise and substantially exceeds recoveries recently approved in other wage-and-hour settlements within this Circuit. *See Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 219 (S.D.N.Y. 2015) ("[A] recovery figure of 22.8% seems within the bounds of reasonableness."); *Wang v. Masago Neo Asian Inc.*, No. 14-6249(DRH)(ARL), 2016 WL 7177514, at *2 (E.D.N.Y. Sept. 26, 2016) (recommending approval of settlement where settlement provided a 52% recovery of potential damages); *Griffin v. Aldi, Inc.*, No. 5:16-cv-00354-LEK-ATB, ECF Nos. 104-1 at 14, 109 (N.D.N.Y. Nov. 15, 2018) (approval of settlement of 28% of maximum damages); *Surdu v. Madison Glob., LLC*, No. 15-CV-6567 (HBP), 2017 WL 3842859, at *11 (S.D.N.Y. Sept. 1, 2017) (finding settlement reasonable where class members receive approximately 50% of economic damages, "in light of the risks of litigation[.]"); *Felix v. Breakroom Burgers & Tacos*, No. 15 Civ. 3531 (PAE), 2016 WL 3791149, at *2 (S.D.N.Y. Mar. 8, 2016) (finding a recovery figure of 24.9% to be reasonable "[i]n light of [] litigation risks[.]"); *Rodriguez-Hernandez v. K Bread & Co., Inc.*, No. 15-cv-6848 (KBF), 2017 WL 2266874, at *4 (S.D.N.Y. May 23, 2017) (approving a settlement of 26% of potential damages given "bona fide disputes" between the parties and litigation risks).

To ascertain Plaintiff's best-case scenario for recovery, Plaintiff's counsel analyzed and evaluated the merits of the various claims at issue. Huot Decl. ¶ 17. Plaintiff's counsel conducted extensive interviews with Plaintiff and reviewed documents obtained from Plaintiff and Defendants, including company records, payroll documents, correspondence, sales records, commission documents, personnel records, insurance information, and mitigation records. *Id.* ¶ 18. Based on this analysis and investigation, Plaintiff's counsel analyzed the strengths and weaknesses of Plaintiff's claims and the range of possible recoveries. *Id.* ¶ 19.

With respect to Plaintiff's FLSA and NYLL wage claims, Plaintiff alleges that she worked an average of 41 to 50 hours per week but was not paid overtime. Complaint ¶¶ 111-117. Plaintiff further alleges that she earned $33,800 in commissions that were never paid to her after her termination from the Company. *Id.* ¶¶ 96-100. Finally, Plaintiff alleges that Defendants failed to furnish her with accurate earning statements during the statutory period. *Id.* ¶ 118; Huot Decl. ¶ 20.






Defendants contest the validity of Plaintiff's contentions, her claimed damages, and the assumptions underlying such claims and calculations. Huot Decl. ¶ 21. Specifically, Defendants dispute the number of hours Plaintiff claims to have worked and the number of weeks she claims to have worked over 40 hours. *Id*. Further, Defendants argue that they paid Plaintiff correctly because she was purportedly exempt from overtime pursuant to the FLSA's administrative exemption. *See id.*; ECF No. 26 at 7 (Plaintiff was "classified as exempt under the administrative exemption and paid on a salary basis."). Defendants also claim that they paid Plaintiff all commission owed to her based on their sales figures and that they did furnish her with accurate wage statements. Huot Decl. ¶ 21.

The parties vehemently dispute these issues and have conferred on numerous occasions regarding the legal and factual issues supporting their respective positions. *Id.* ¶ 22. The parties agree that these issues involve fact intensive inquiries regarding the nature of Plaintiff's work. *Id.* ¶ 23. Among other things, these inquiries require an assessment of Plaintiff's work activities, her job duties and responsibilities, as well as testimony regarding the number of hours Plaintiff worked both in the office and remotely. *Id.* The parties further agree that these issues likely require credibility determinations that significantly bear on liability and damages. *Id*. Given the fact-intensive nature of the issues in dispute, had this matter not resolved, it likely would have proceeded to trial, at a minimum, on the issues of how many hours Plaintiff worked and how much she was paid. *Id.* ¶ 24.

Nevertheless, for settlement purposes only, the parties assumed the main wage-related disputed issues to the benefit of Plaintiff. *Id.* ¶ 25. Indeed, the parties assumed that: (1) Plaintiff did work an average of 41 to 50 hours per week; (2) that Plaintiff was not exempt under the FLSA and was entitled to overtime compensation; (3) that Plaintiff was entitled to $33,800 in commission after her termination; and (4) that Defendants did not furnish Plaintiff with accurate wage statements. *Id.* Indeed, for settlement purposes only, the parties assumed that Plaintiff would prevail on each of these claims and that Defendants would lose on all of their defenses – a very favorable assumption. *Id.* ¶ 26.

Making all favorable assumptions to Plaintiff's benefit, Plaintiff asserts that her damages for all unpaid wages, including unpaid overtime, final wages, and unpaid commissions, as well as statutory damages for wage statement violations, amount to $91,963.10. *Id.* ¶ 27. The total Settlement in this case is $160,000.00, of which $60,590.64 is allocated directly to Plaintiff for her FLSA and NYLL wage claims. Ex. A § 1. This $60,590.64 amount is net of attorneys' fees and costs and represents a ***65.89% recovery*** of Plaintiff's best-case scenario damages, including statutory damages ($91,963.10). Huot Decl. ¶ 28. The remaining amount is intended to compensate Plaintiff for her non-wage claims of discrimination and retaliation under Title VII, NYSHRL, NYCHRL, as well as breach of contract claims, and attorneys' fees and costs. *Id.* ¶ 29.

Given the fact-intensive nature of the claims, and the risk that Defendants might potentially prevail on at least some of their defenses, Plaintiff's counsel believes that this Settlement reflects a substantial portion of the maximum possible recovery that Plaintiff would obtain if she litigated





this matter through summary judgment and/or trial and is a remarkable result for Plaintiff. *Id.* ¶ 30.

**B. By Entering Into the Settlement, the Parties Avoid Significant Burden in Establishing Their Claims and the Attendant Risks of Continued Litigation**

The second and third *Wolinsky* factors are met because the parties will avoid the significant expense of motion practice, and the risk of a lengthy, fact-specific trial. Courts have repeatedly recognized that cases where plaintiffs must prove that they engaged in overtime work are both fact-intensive and challenging, as it is difficult to establish the parties' claims and defenses. *See, e.g.*, *Riedel v. Acqua Ancien Bath N.Y. LLC*, No. 14 Civ. 7238 (JCF), 2016 WL 3144375, at *7 (S.D.N.Y. May 19, 2016) (recognizing risk in establishing liability for wage claims); *Long v. HSBC USA Inc.*, No. 14 Civ. 6233(HBP), 2015 WL 5444651, at *4 (S.D.N.Y. Sept. 11, 2015) ("[T]he claims and defenses are fact-intensive and present risks, including the potential inability to prove the number of hours worked and amount of unpaid overtime wages[.]").

Here, the burden will be especially great because the parties maintain drastically different assessments on the number of hours Plaintiff worked, her duties and entitlement to overtime compensation, and the amount Plaintiff was owed in commission. Huot Decl. ¶¶ 20-24. Put differently, "further litigation would result in additional expense, including . . . [costs relating to] motion practice, trial preparation, trial and appeal, that could meaningfully decrease possible recovery for plaintiffs." *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 299-300 (E.D.N.Y. 2015); *Romero v. La Revise Assocs., L.L.C.*, 58 F. Supp. 3d 411, 420-21 (S.D.N.Y. 2014) (finding, in an FLSA action, that "the fact-intensive nature of their claims mean that litigation would likely be lengthy, complex, and expensive"). Given the fact-intensive analysis of the issues in dispute, the parties have saved themselves the costs and risks associated therewith (*id.*), thus satisfying the second and third factors delineated by *Wolinsky*.

**C. The Settlement is the Product of Arm's-Length Bargaining Between Experienced Counsel and There is No Possibility of Fraud or Collusion**

The fourth and fifth factors – whether the Settlement is the product of an arm's-length bargaining process and the possibility of fraud or collusion – also support a conclusion that the Settlement is fair and reasonable. "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *Hernandez v. Merrill Lynch & Co., Inc.*, No. 11 Civ. 8472 (KBF) (DCF), 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013); *Rangel v. 639 Grand St. Meat & Produce Corp.*, No. 13 CV 3234(LB), 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (approval granted where settlement "was the result of arm's length negotiations, which were undertaken in good faith by counsel") (internal quotation marks omitted). All parties in this matter are represented by counsel experienced in litigating wage and hour and employment disputes. Huot Decl. ¶ 31; Ex. B (Faruqi Firm Resume); Declaration of Joshua Beldner in Support of Plaintiff's Motion for Settlement Approval and Attorneys' Fees ("Beldner Decl.") ¶¶ 2-10. Counsel for the parties have worked diligently to advance their clients' positions and negotiate a fair resolution. Huot Decl. ¶ 32.






Significantly, the parties exchanged formal discovery and participated in a full-day mediation session with well-respected mediator Michael Koblenz, Esq., wherein the parties engaged in multiple rounds of contentious negotiations with the assistance of the third-party neutral. *Id.* ¶ 33. This history and litigation process leave no doubt that the counsel for the parties negotiated at arm's-length, the Settlement is not the product of fraud or collusion, and that the Settlement is entitled to a presumption of reasonableness. *See Hernandez v. Anjost Corp.*, No. 11 Civ. 1531(AT), 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("A settlement like this one, reached with the help of a third-party neutral, enjoys a 'presumption that the settlement achieved meets the requirements of due process.'" (quoting *Johnson v. Brennan*, No. 10 Civ. 4712 (CM), 2011 WL 4357376, at *8 (S.D.N.Y. Sept. 16, 2011)); *Vasquez v. TGD Grp., Inc.*, No. 14-CV-7862 (RA), 2016 WL 3181150, at *3 (S.D.N.Y. June 3, 2016) (same).

Further, the Settlement does not contain any of the provisions admonished in *Cheeks*. Following *Cheeks*, courts have looked unfavorably upon FLSA settlement agreements that contain confidentiality agreements and broad releases where workers release claims that have not been raised. *See Jones v. Smith*, 319 F. Supp. 3d 619, 626 (E.D.N.Y. 2018) (court could not approve FLSA settlement "given its confidentiality provision"); *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 178 (S.D.N.Y. 2015) ("The rationale for rejecting confidential FLSA settlements is particularly strong, since sealing FLSA settlements from public scrutiny could thwart the public's independent interest in assuring that employees' wages are fair.") (internal quotation marks omitted); *Wolinsky*, 900 F. Supp. 2d at 337-41 (court did not approve FLSA settlement with confidentiality agreement).

Critically, this Settlement does not contain any terms that would militate against the Court approving it. The Settlement does not contain any confidentiality provision or non-disparagement clause and allows Plaintiff to openly and freely discuss her employment experiences, her lawsuit, her claims, and this Settlement with anyone. *See generally* Ex. A; *see also Ezpino v. CDL Underground Specialists, Inc.*, No. 14-CV-3173 (DRH) (SIL), 2017 WL 3037483, at *2-3 (E.D.N.Y. June 30, 2017) (citing *Cheeks*, 796 F. 3d at 206) (approving settlement agreement where it did not "contain a confidentiality provision nor does it contain a non- disparagement clause").

Likewise, the Settlement contains a ***mutual*** release. *See* Ex. A §§ 2 and 4. Plaintiff agrees to release her claims against only Defendants and only those claims arising out of the FLSA, NYLL, Title VII, NYSHRL, NYCHRL, and breach of contract – "all of which were specifically raised in this Lawsuit." *Id.* § 2. Additionally, Defendants agree to release all claims against Plaintiff that they have or could have had prior to the signing of the Agreement. *Id.* § 4.

The parties are mindful that courts have expressed concern over widespread, sweeping releases of claims. *See, e.g.*, *Cheeks*, 796 F.3d at 206. However, this release is not overly broad as it is limited to only specific claims arising out of itemized statutes, "all of which were specifically raised in the Lawsuit." Ex. A § 2. This release is justified as Plaintiff raised claims against Defendants not only under the FLSA, but also under the NYLL, Title VII, NYSHRL, and NYCHRL, as well as for breach of contract. Indeed, the negotiated Settlement amount is intended to compensate Plaintiff not only for her FLSA claims, but also for her NYLL, Title VII, NYSHRL,






NYCHRL, and breach of contract claims. Huot Decl. ¶¶ 27-29. Courts in the Second Circuit have routinely approved similar releases noting that it was appropriate to release all claims (not just FLSA claims) triggered by a lawsuit. *E.g., Melendez v. Mokbar LLC*, No. 19-CV-6984 (RA), 2020 WL 815032, at *1 (S.D.N.Y. Feb. 19, 2020) (approving settlement agreement where Plaintiff released Defendants from FLSA claims and other claims (including NYCHRL claims) "relating specifically to the claims in the Litigation") (internal quotation marks omitted); *Merino Leon v. Univ 45 Fruit & Vegetable Corp.*, No. 19-CV-8266 (RA), 2020 WL 1322580, at *2 (S.D.N.Y. Mar. 20, 2020) (approving settlement agreement where "Plaintiffs are only releasing Defendants from claims relating specifically to the claims in the Litigation") (internal quotation marks omitted); *see also Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-cv-5008 (RJS), 2016 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) (release was fair and reasonable since it does not release any future claims); *Plizga v. Little Poland Rest. Inc.*, No. 15-CV-08820 (LAK) (BCM), 2016 WL 9307474, at *6 (S.D.N.Y. July 18, 2016) (approving release of claims related to employment because "[w]here 'the settlement only binds the parties to the suit,' and the plaintiff can make an informed decision" as to the value of the claims she is releasing.) (quoting *Souza v. 65 St. Marks Bistro*, No. 15-CV-327(JLC), 2015 WL 7271747, at *6 (S.D.N.Y. Nov. 6, 2015)).

In sum, this Settlement provides for a remarkable recovery for Plaintiff, mitigates significant risks and costs of litigation, is the product of arm's-length bargaining amongst experienced counsel, does not contain a confidentiality provision, non-disparagement clause, or overbroad release, is exceedingly fair and reasonable, and represents a fair compromise of bona fide disputes. As such, the Court should approve this Settlement.

## III. <u>The Proposed Attorneys' Fees and Costs Are Fair and Reasonable</u>

Plaintiff requests that the Court approve Plaintiff's counsel's fees of $52,708.65, which is one-third (33.33%) of the $160,000 Settlement Amount after costs are deducted; 32.9% before the deduction. Huot Decl. ¶ 34. *See Navarrete v. Milano Mkt. Place, Inc.*, No. 18-CV-7858 (OTW), 2019 WL 4303347, at *2 (S.D.N.Y. Sept. 11, 2019) (the attorneys' fee award of "one-third of the settlement sum is reasonable and consistent with fees upheld by courts in this District"). The requested fee amounts to only 47% of Plaintiff's counsel's lodestar of $112,035.00 in this case and is exceedingly fair and reasonable under all applicable laws. Huot Decl. ¶¶ 34-35.

The requested fee is consistent with the one-third contingency fees frequently approved as part of FLSA settlements in this Circuit and in this District. *See, e.g.*, *Singh v. MBD Constr. Mgmt., Inc.*, No. 16 Civ. 5216(HBP), 2018 WL 2332071, at *2 (S.D.N.Y. May 23, 2018) (noting that one-third of settlement is "normal rate"); *Ezpino*, 2017 WL 3037483, at *3 ("[a] one-third contingency fee is a commonly accepted fee in this Circuit.") (quoting *Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13-CV-6126(NGG)(VMS), 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014)); *Abrar v. 7-Eleven, Inc.*, No. 14-cv-6315 (ADS) (AKT), 2016 WL 1465360, at *3 (E.D.N.Y. Apr. 14, 2016) (approving fees for one third of the total settlement as fair and reasonable and collecting cases).

The requested fees are further justified by the circumstances of this action. Plaintiff's counsel was retained on a purely contingency basis and, as a result, has advanced all costs and






shouldered all the risks in this litigation. Huot Decl. ¶ 36. Such risks have included a possibility that Plaintiff would recover no damages at all, given the highly fact-intensive nature of her wage claims. *Id.* ¶ 37. Indeed, awarding the requested fees furthers the FLSA's remedial purposes by recognizing the risks attendant to relatively small wage claims like Plaintiff's here. *See Asare v. Change Grp. of N. Y., Inc.*, No. 12 Civ. 3371(CM), 2013 WL 6144764, at *22 (S.D.N.Y. Nov. 18, 2013) ("The FLSA and NYLL are remedial statutes designed to protect the wages of workers. Fair compensation for attorneys who prosecute those rights by taking on such litigation furthers the remedial purpose of those statutes."); *see also Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 189 (W.D.N.Y. 2005) ("[D]ue to the relatively small settlement involved here, the requested fee award" of $50,000 out of a $125,000 settlement fund, or 40% of the settlement, "is necessary to compensate counsel adequately."). Put differently, awarding "fees sufficient to compensate counsel for at least a substantial portion of the work it has performed" ensures that counsel will continue to "bewilling to take on future small-scale [ ] actions such as this." *Id.*; *see also In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *6 (S.D.N.Y. Sept. 29, 2003) (noting that there is an inverse relationship between a fee award and the amount of the settlement).

The reasonableness of the requested fee is further confirmed by applying the lodestar method as a "crosscheck." *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000); *Masters v. Wilhelmina Model Agency, Inc.*, 473 F.3d 423, 436 (2d Cir. 2007); *Flores v. Anjost Corp.*, No. 11 Civ. 1531(AT), 2014 WL 321831, at *9 (S.D.N.Y. Jan. 29, 2014); *In re Penthouse Exec. Club Comp. Litig.*, No. 10 Civ. 1145(KMW), 2014 WL 185628, at *10 (S.D.N.Y. Jan. 14, 2014); *Pucciarelli v. Lakeview Cars, Inc.*, No. 16-CV-4751(RRM)(RER), 2017 WL 2778029, at *1 (E.D.N.Y. June 26, 2017). The lodestar is determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate.

As of April 5, 2021, Plaintiff's counsel has billed 330.5 hours on this matter, amounting to $112,035.00 in fees if calculated pursuant to the lodestar. *See* Huot Decl. ¶ 38; Ex. C (Total Lodestar); Ex. D (Faruqi Firm's contemporaneously-kept billing records); Beldner Decl. ¶¶ 11-12; Beldner Decl. at Ex. A (Tilton Beldner's contemporaneously-kept billing records). The lodestar is calculated based on hourly rates for Plaintiff's counsel that have been approved by other courts in the Second Circuit and across the country. Huot Decl. ¶¶ 42-45; Beldner Decl. ¶ 10; *see also Feliciano, et al. v. Metro. Transp. Auth., et al.*, No. 18-cv-00026-VSB, ECF Nos. 97-1 ¶ 60, 99 (S.D.N.Y. May 6, 2020) (approving hourly rates of $500 for Ms. Huot, $500 for Mr. Beldner, $500 for Mr. Tilton, $425 for Mr. Hartzband, $350 for Mr. Collopy, and $175 for Mr. Aloise); *Vitale, et al. v. Mystique Hookah Lounge, Inc., et al.*, No. 2:20-cv-01091-JMA-AKT, ECF No. 28 ¶ 42 (E.D.N.Y. Mar. 30, 2021) (approving rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, $350 for Mr. Crabill, $325 for Mr. Burr, $175 for Mr. Aloise, and $150 for Mr. Behnke); *Molina, et al. v. Huaxcuaxtla Restaurant Corp., et al.*, No. 1:20-cv-02481-RWL, ECF Nos. 74 ¶ 53; 76 (S.D.N.Y. Feb. 25, 2021) (approving rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, $350 for Mr. Crabill, $325 for Mr. Burr, $175 for Mr. Aloise, and $150 for Mr. Behnke); *Sanchez, et al. v. The Stonehouse Rest LLC, et al.*, No. 1:18-cv-01397-ST, ECF Nos. 75 ¶ 67; 77 (E.D.N.Y. Feb. 4, 2021) (approving rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, $325 for Mr. Burr, $175 for Mr. Aloise, and $150 for





Mr. Behnke); *Kuznetsov, et al. v. Bravura Glass and Mirror Corp., et al.*, No. 1:20-cv-00726-LB, ECF Nos. 23 ¶ 51; 25 (E.D.N.Y. Dec. 23, 2020) (approving rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, $325 for Mr. Burr, $175 for Mr. Aloise. and $150 for Mr. Behnke); *Pazdniakou v. CoolTech Mech. Corp., et al.*, No. 1:19-cv-05434-SJB, ECF Nos. 18 ¶ 49; 21 (E.D.N.Y. Mar. 23, 2020) (approving rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, $175 for Mr. Aloise, and $150 for Mr. Behnke); *Ackerman v. N.Y. Hosp. Med. Ctr. of Queens*, No. 702965/2013, Dkt. Nos. 71 ¶ 26; 80 (N.Y. Sup., Queens Cty. June 24, 2020) (noting Plaintiffs' counsels' substantial experience in wage and hour litigation and their skill and commitment to representing the Settlement Class's interests and approving hourly rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, $175 for Mr. Aloise, and $150 for Mr. Behnke); *Reeves, et al. v. La Pecora Bianca, Inc., et al.*, No. 151153/2018, Dkt. Nos. 57 ¶ 81; 108 (N.Y. Sup. N.Y. Cty. June 11, 2020) (approving rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, $300 for Mr. Burr, and $175 for Mr. Aloise, and $150 for Mr. Behnke); *Georgiev, et al. v. Shapiro, et al.*, No. 1:19-cv-00122 (JPO), ECF Nos. 41 ¶ 24; 47 (S.D.N.Y. Oct. 2, 2019) (approving rates of $500 for Ms. Huot, $425 for Mr. Hartzband, $350 for Mr. Collopy, and $175 for Mr. Aloise); *Morrell, et al. v. NYC Green Transp. Grp., LLC, et al.*, No. 1:18-cv-00918-PKC-VMS, ECF Nos. 129-1 ¶ 31; Court's May 8, 2019 Order (E.D.N.Y. May 8, 2019) (approving hourly rates of $500 for Ms. Huot, $350 for Mr. Collopy, and $175 for Mr. Aloise); *Griffin, et al. v. Aldi, Inc.*, No. 5:16-cv-354 (LEK/ATB), ECF Nos. 104-4 ¶ 3; 109 ¶¶ 18, 20 (N.D.N.Y. Nov. 15, 2018) (approving a lodestar multiplier of 1.96, noting Plaintiffs' counsels' expertise in complex wage and hour litigation, commending Plaintiffs' counsel on the quality of their work, and approving hourly rates of $500 for Ms. Huot, $350 for Mr. Collopy, and $175 for Mr. Aloise); *Alam v. O&S Gen. Contractors Corp*., No. 18-cv-2069 (LDH)(JO), ECF Nos. 19-4 at Ex. 1; 20 (E.D.N.Y. Aug. 17, 2018) (approving hourly rates of $600 for Ms. Huot, $450 for Mr. Hartzband, $400 for Mr. Collopy, and $310 for Mr. Aloise); *Guttentag, et al. v. Ruby Tuesday, Inc.*, No. 12 Civ. 3041 (AT), ECF Nos. 107-8; 109 (S.D.N.Y. Oct. 2, 2014) (approving hourly rates of $875-$625 for partners, $585-$555 for senior associates, $390-$375 for junior associates, $315 for head paralegal, and $275-$245 for other paralegals); *Foster, et al. v. L-3 Commc'ns EoTech, Inc., et al.*, No. 15-cv-03519-BCW, ECF Nos. 140-1; 155 (W.D. Mo. July 7, 2017) (approving hourly rates of $550 for Ms. Huot, $375 for Mr. Collopy, $375 for Mr. Behnke, and $310 for Mr. Aloise); *Run Them Sweet LLC, v. CPA Global, LTD, et al.*, No. 16 CV 1347, ECF Nos. 108-4 at Ex. 2; 114 (E.D. Va. Oct. 6, 2017) (approving hourly rate of $550 for Ms. Huot); *March, et al. v. First Choice Med., PLLC*, No. 15-cv-3669 (GRB), ECF Nos. 46 ¶ 12; Court's Mar. 6, 2017 Order (E.D.N.Y. Mar. 6, 2017)(court approved one-third fee after lodestar, based on $500 per hour rate for Ms. Huot, used as cross-check).

Additionally, courts have previously noted that "[a] reasonable hourly rate is 'the rate a paying client would be willing to pay.'" *HVT, Inc, v. Port Auth. of N.Y. and N. J.*, No. 15 Civ. 5867(MKB) (VMS), 2018 WL 6079932, at *1 (E.D.N.Y. Nov. 21, 2018) (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. Of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)). A meaningful portion of Plaintiff's counsel's practice is non-contingency cases where clients in fact pay on an hourly basis at the following rates: $500 per hour for Ms. Huot, $425 to $500 per hour for Mr. Beldner and Mr. Tilton, $425 per hour for Mr. Hartzband, $350 per hour for Mr. Collopy and Mr. Crabill, $325 per hour for Mr. Burr, $175 per hour for head paralegal Mr. Aloise, and





$150 per hour for Mr. Behnke and other paralegals. Huot Decl. ¶¶ 41-43; Beldner Decl. ¶ 10. Working on the instant matter on a contingency basis required Plaintiff's counsel to expend considerable time and resources that could have been otherwise allocated towards non-contingency, hourly work. Huot Decl. ¶ 41. Nevertheless, Plaintiff's counsel undertook prosecuting this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. *Id.*

The requested fee award of $52,708.65 represents a ***negative multiplier*** of 0.47 times of Plaintiff's counsel's lodestar of $112,035.00. *Id.* ¶ 40. Indeed, the requested fee award is only 47% of Plaintiff's counsel's actual lodestar. *Id.* Put differently, Plaintiff requests approval of attorneys' fees amounting to less than half of the market value of the hourly work that has been invested in this action to bring it to resolution. *Id.* As such, the requested attorneys' fees are reasonable.

Further, Plaintiff requests that the Court approves reimbursement of costs and expenses incurred by Plaintiff's counsel in furtherance of this matter. Plaintiff's counsel has incurred $1,874.04 in actual costs and expenses for *inter alia* filing fees, service costs, and mediation expenses. *Id.* ¶ 49. These expenses are reasonable, as well as incidental and necessary to the litigation; therefore, their reimbursement under the Settlement should be approved. *Id.* ¶ 50; *see also Miltland Raleigh-Durham v. Myers*, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they 'were incidental and necessary to the representation' of those clients.") (quoting *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)).

Accordingly, Plaintiff's request for approval of $52,708.65 in attorneys' fees and $1,874.04 in unreimbursed expenses, for a total of $54,582.69 as compensation for Plaintiff's counsel's work and their costs in this matter, is reasonable.

## IV. Conclusion

Accordingly, the parties jointly request that the Court approve of the Settlement, So Order the Stipulation and [Proposed] Order Approving the Settlement and Dismissing the Case, and have it entered on the docket by the Clerk of the Court.

We thank Your Honor for the Court's time and consideration.

Respectfully submitted,

Innessa M. Huot

Cc: Counsel of Record (*via* ECF)